DANIEL BOMBERO ET AL. *v.* IRENE MARCHIONNE ET AL.
(5342)

HULL, BORDEN and SPALLONE, Js.

Submitted on briefs April 6—decision released July 7, 1987

*Bruce L. Levin,* for the appellants (plaintiffs).
*Ira H. Lippman,* for the appellee (named defendant).

HULL, J. After a trial to a jury on the issue of damages, the plaintiff[1] was awarded $12,184.47.[2] The plaintiff's motion to set aside the verdict as inadequate was denied. On appeal he claims that the court erred (1) in precluding his treating orthopedic surgeon from giving an opinion as to whether the plaintiff's injuries would preclude him from carrying out his work duties in twenty years, (2) in failing to charge the jury as to diminished earning capacity, (3) in charging the jury on the plaintiff's life expectancy without adequate explanation, (4) in excluding evidence of the costs of towing the plaintiff's vehicle and renting a substitute vehicle, and (5) in refusing to take judicial notice of the sales tax in 1981 as an element of damages.

The jury could reasonably have found the following facts. On January 29, 1981, a vehicle operated by the

---

[1] The plaintiffs in this action are Daniel J. Bombero and his father, Stephen C. Bombero. The term plaintiff as used in this opinion refers to Daniel J. Bombero. The defendants in the original action were Alberto Marchionne and Irene M. Marchionne. Alberto Marchionne was subsequently dropped as a party defendant. The term defendant as used in this opinion refers to Irene M. Marchionne.

[2] The court had previously granted the plaintiff's motion for summary judgment on the issue of liability, and that has not been contested in this appeal.

defendant collided with a vehicle operated by the plaintiff. The plaintiff was rendered unconscious for a short time after the accident. He regained consciousness before being taken to St. Vincent's Hospital in Bridgeport, where he was diagnosed as having suffered a concussion. The plaintiff was out of work for three weeks, and complained of stiffness in his neck and difficulty walking.

The plaintiff was treated by Donald Dworken, an orthopedic surgeon, for several months. In June, 1981, Dworken estimated that the plaintiff had a 5 to 6 percent permanent disability of the cervical spine and a 4 to 5 percent disability of the right knee. The plaintiff returned to Dworken in 1984, complaining of persisting pain in his neck. Dworken related the pain to the 1981 accident, and also noted continued swelling of the plaintiff's right knee. In 1985, the plaintiff began working for his father as a soil scientist and land surveyor.[3] His duties involved physical activity, which he stated caused stress to his neck and knee.

At trial, the plaintiff's counsel attempted to elicit an opinion from Dworken on the following hypothetical question: "Based upon—assuming that Mr. Bombero had an automobile accident, motor vehicle accident January 29, 1981, which resulted in the injuries and treatment to which you testified in 1983, and the reoccurrence in 1984 with treatment to which you have testified, and that he has 5 to 6% permanent disability of his right knee, and that his work entails, well that he is in the land surveying and soil science would these vocations requiring lifting, getting down digging holes, heavy lifting, banging metal posts into the ground with a sledgehammer, carrying large instruments on his shoulder and pulling soil samples out of the earth with

[3] The plaintiff received a bachelor of science degree from the University of Connecticut in the area of agronomy (soil science) in 1980.

an auger about three feet long, that is his vocation, that's what his work entails, do you have an opinion as to whether he will be able to carry out that work, those functions *twenty years from now* in the same manner that he would otherwise be able to carry them out if he did not have these disabilities?" (Emphasis added.) Defense counsel's objection that the question was inadmissible as too speculative was sustained by the court.

Also at trial, the plaintiff attempted to introduce evidence of the cost of towing and renting a substitute vehicle. The court sustained the defendant's objection that neither of these costs had been specifically pleaded.

During the second day of trial, the plaintiff requested that the court take judicial notice of the 1981 sales tax in Connecticut. The court sustained the defendant's objection that sales tax is not part of the measure of damages in the loss of a vehicle. The plaintiff properly excepted to all the court's rulings.

I

The plaintiff's first claim is that the court erred in not allowing Dworken to answer the hypothetical question posed to him. As the plaintiff points out in his brief, the determination of the admissibility of a hypothetical question rests within the sound discretion of the trial court. *Trzcinski* v. *Richey,* 190 Conn. 285, 297, 460 A.2d 1269 (1983); *Duley* v. *Plourde,* 170 Conn. 482, 488, 365 A.2d 1148 (1976). The proper standard for appellate review of a trial court's decision permitting expert opinion testimony is therefore whether there has been an abuse of discretion or clear error. *Spoto* v. *Hayward Mfg. Co.,* 2 Conn. App. 663, 673–74, 482 A.2d 91 (1984).

The plaintiff's hypothetical question sought to elicit an opinion as to the plaintiff's physical condition at a particular point in time, twenty years in the future. We

conclude that the court could reasonably have found that Dworken's response would have been too speculative.

"The expert opinion that seeks to establish the causal connection between the injury and the alleged negligence 'must rest upon more than surmise or conjecture.' *Boland* v. *Vanderbilt,* 140 Conn. 520, 525, 102 A.2d 362 (1953). 'In evaluating damages in a tort action, a trier is concerned with reasonable probabilities, not with possibilities.' (Citations omitted.) *Healy* v. *White,* 173 Conn. 438, 443, 378 A.2d 540 (1977); *Sheiman* v. *Sheiman,* 143 Conn. 222, 225, 121 A.2d 285 (1956)." *Shelnitz* v. *Greenberg,* 200 Conn. 58, 66, 509 A.2d 1023 (1986).

We conclude that there are so many variables in the hypothetical posed by the plaintiff that the court could reasonably have found that there was no value to the question whatsoever. Many unrelated changes in the nature of the plaintiff's occupation and physical condition could occur in the next twenty years. Any response made could only have been speculation, and the court, therefore, did not abuse its discretion in disallowing the question.

## II

The plaintiff's second claim is that the court erred in not charging the jury on the plaintiff's diminished earning capacity. A party " 'who seeks to recover damages of this nature must establish a reasonable probability that his injury did bring about a loss of earnings, and must afford a basis for a reasonable estimate by the trier, court or jury, of the amount of that loss.' " *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 360, 374 A.2d 1047 (1977); see also *Delott* v. *Roraback,* 179 Conn. 406, 411, 426 A.2d 791 (1980). Where the evidence is so speculative that the jury could do no more

than surmise as to the amount of damages, the claim should not be submitted to the jury. *Mazzucco* v. *Krall Coal & Oil Co.,* supra.

The plaintiff's brief states the following with respect to this claim. "[T]he uncontroverted evidence was that the plaintiff suffered a 5 to 6% permanent partial disability of his cervical spine and a 4 to 5% permanent partial disability of his right knee. Dr. Dworken testified that indeed, those disabilities are permanent. He further testified that the plaintiff 'is going to have problems in the future.' The plaintiff must avoid kneeling or bumping his knee. And the plaintiff must avoid 'excessive sitting with his head down doing paper work, which is a part of his job.' Excessive heavy lifting would likely cause a reoccurrence of the neck injury. The plaintiff is more susceptible to injuring his neck than he would have been had the January 29, 1981 collision not occurred.

"At the time of trial, the plaintiff worked for his father as a land surveyor and soil scientist. At the time of trial, he was 29 years of age. In addition to his limitations in physical activity to which the plaintiff Daniel Bombero testified, his father also confirmed that Daniel no longer had the agility and vigor he had prior to the collision and was unable to carry his tools for as long or with the same agility as he had before the accident. The plaintiff, according to the statistical tables, may live to age 73.5."

The plaintiff offers no additional evidence in support of his claim. Even if we assume that all these facts are true, the plaintiff has still failed to provide the court with a basis for a reasonable estimate of diminished earning capacity. The only evidence in the record of an economic nature is that at the time of the accident, the plaintiff earned $15,000 per year, or $7.50 per hour; in 1984 he began making $14 per hour; at the time of

the trial, he was earning approximately $30,000 per year. Further, the plaintiff went to college to become a soil scientist and land surveyor, and it is that very profession he is practicing. There is no evidence in the record concerning a potential future loss of income due to the injuries sustained.

After a thorough review of the record, we conclude that there was no evidence to support a claim for diminished earning capacity, and the trial court therefore did not err in failing to charge the jury on that claim.

### III

The plaintiff's third claim is that the court erred in not explaining to the jury that the plaintiff's life expectancy was another, additional 44.5 years. The plaintiff was 29 years of age at the time of trial. According to mortality tables at the time of trial, his life expectancy was 44.5 years. See Am. Jur. 2d Desk Book, Item No. 160.

The court charged the jury as follows: "[Y]ou have had testimony through the plaintiff and through a life expectancy chart that since the plaintiff, at this time, is 29 years of age, based upon statistics, he would have an expected life expectancy of 44.5 years. That would be 44 and one-half years. That doesn't mean that he will live that long or that he won't live longer. But based on statistics, that has been determined for a 29 year old individual." The plaintiff claims that the charge is unclear and could have led the jury to believe that he is expected to live only until he is 44.5 years old. In his closing argument, however, plaintiff's counsel made the following statement: "It's your duty to compensate him for what he has lost over the *next* 44 and a half years, throughout the rest of his work life." (Emphasis added.)

A jury charge must be read not only as a whole, but also in conjunction with the evidence presented. *United States* v. *Park,* 421 U.S. 658, 674, 95 S. Ct. 1903, 44 L. Ed. 2d 489 (1975); *State* v. *Roque,* 190 Conn. 143, 157, 460 A.2d 26 (1983). Even if we assume arguendo that the charge, when it is read in a vacuum, was ambiguous, when read in conjunction with plaintiff's counsel's own argument, any ambiguity was erased. That statement served to alert the jury that the plaintiff's life expectancy was an additional 44.5 years. We conclude that although the trial court could have made this portion of the jury charge clearer, when reviewed in conjunction with plaintiff's counsel's own argument, the jury could not have been misled. See *State* v. *Belton,* 190 Conn. 496, 502, 461 A.2d 973 (1983); *Tripp* v. *Anderson,* 1 Conn. App. 433, 435–36, 472 A.2d 804 (1984).

IV

The plaintiff's fourth claim is that the trial court erred in excluding evidence of the cost of towing his vehicle and the cost of renting a substitute vehicle. The defendant claims that these were special damages that should have been specifically pleaded.

A plaintiff may rely only upon the allegations of his complaint. *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983); *Lundberg* v. *Kovacs,* 172 Conn. 229, 232, 374 A.2d 201 (1977). The general rule is that " 'if recovery is sought for consequences which do not necessarily and immediately flow from the injury, the damages therefore are known as special and cannot be recovered unless alleged in the complaint or specified in a bill of particulars.' *Baldwin* v. *Robertson,* 118 Conn. 431, 435, 172 Atl. 859 [1934]." *Delmore* v. *Polinsky,* 132 Conn. 28, 33, 42 A.2d 349 (1945).

" 'Pain and suffering, the obvious consequences of a serious injury, are elements of damage and need not

be specially alleged.' *Gervais* v. *Foehrenbach,* 149 Conn. 461, 464, 181 A.2d 253 (1962)." *Manning* v. *Michael,* 188 Conn. 607, 617, 452 A.2d 1157 (1982). Ordinarily, however, such things as loss of earnings and doctor and hospital bills are referred to as special damages. Since they do not necessarily follow an injury, the defendant is entitled to notice of them by a special allegation. *Varley* v. *Motyl,* 139 Conn. 128, 137, 90 A.2d 869 (1952); *Tomlinson* v. *Derby,* 43 Conn. 562, 567 (1876). Although such special damages result from the natural consequences of the act complained of, they are not the necessary result of it. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 223 n.16, 477 A.2d 988 (1984). We conclude that the costs of towing and replacing the plaintiff's car fall into the latter category, those damages which should be specifically pleaded.

The plaintiff refers us to *Blakeslee Co.* v. *Rigo,* 94 Conn. 481, 484–85, 109 A. 173 (1920), and *Trichilo* v. *Trichilo,* 190 Conn. 774, 779, 462 A.2d 1048 (1983), in support of his assertion that the claims for towing and loss of use expenses are implied in the allegation that the vehicle was "greatly damaged." Those cases are both distinguishable from the present case, however. In *Blakeslee Co.,* the complaint stated that the plaintiff sustained damages from the replevying of a truck in the sum of $3000. There can be no question that in a replevy action, loss of use of the vehicle will occur. Further, in *Blakeslee Co.,* the plaintiff offered evidence as to loss of use of the truck. In the present case, there is not an implicit loss of use of an automobile simply because great damage was done to it. With no more information in the record, it could be as likely that the plaintiff was able to continue driving the automobile.

The plaintiff relies on a statement in *Trichilo* v. *Trichilo,* supra, 779, that " '[w]hat is necessarily implied need not be expressly alleged.' " His reliance,

however, is misplaced. The court in *Trichilo* was discussing the presumption of agency that is implied in General Statutes § 52-183. That case has no relation to the present one. We conclude that the claims for towing and rental costs are not the necessary result of an accident in which an automobile was "greatly damaged." As there was no specific claim for those costs, the trial court did not err in excluding such evidence.

## V

The plaintiff's final claim is that the court erred in refusing to take judicial notice of the sales tax in 1981 as an element in the computation of the plaintiff's damages. The defendant asserts that the court acted correctly, as sales tax "is not a measure of damages in a loss of vehicle," and the plaintiff pleaded only damage to his vehicle.

In determining the measure of damages to a vehicle, "[t]he true rule is that the measure of damages is the difference between the fair market value of the car before the collision and its fair market value afterwards, plus interest from the date of loss." *Stults* v. *Palmer*, 141 Conn. 709, 712, 109 A.2d 592 (1954); see also *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 305, 397 A.2d 1367 (1978); *Damico* v. *Dalton,* 1 Conn. App. 186, 187, 469 A.2d 795 (1984).

The question before us is therefore whether the sales tax must be included in a determination of fair market value. There is more than one method of computing fair market value. "In determining fair market value, the trial court is free to select the method of valuation most appropriate to the case before it." *D'Addario* v. *Commissioner of Transportation,* 180 Conn. 355, 365, 429 A.2d 890 (1980); *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 37–38, 428 A.2d 780 (1980). The trial court could have chosen

to use replacement cost as fair market value. That method would have included sales tax. The trial court also could have defined fair market value as " 'the value which could be realized by the owner if the vehicle could be sold on the open market.' " *Bragg* v. *Ginsberg*, 314 S.E.2d 865, 867 (W.Va. 1984); *Herring* v. *Ferrell*, 130 Ga. App. 431, 432, 203 S.E.2d 617 (1973). The plaintiff clearly would not "realize" the sales tax on the car. The only entity that would realize sales tax is the state of Connecticut. We are unable to determine from the record before us which method the trial court considered most appropriate.

It is the appellant's responsibility to provide an adequate record for appeal. *Thiel Realty Corporation* v. *Culligan Water Conditioning Co.*, 9 Conn. App. 191, 193, 517 A.2d 1052 (1986); *Pointina Beach Assn., Inc.* v. *Stella*, 1 Conn. App. 341, 343, 471 A.2d 970 (1984). The plaintiff could have asked for an articulation of the trial court's decision on this evidentiary point. He did not. We therefore cannot determine whether the trial court erred in refusing to take judicial notice of the Connecticut sales tax.

There is no error.

In this opinion SPALLONE, J., concurred.

BORDEN, J., dissenting. I dissent from part IV of the majority decision regarding the trial court's exclusion of the plaintiff's evidence of the cost of towing his vehicle and of renting a substitute vehicle. Such damages are recoverable as a result of tortious damage to a vehicle. See generally *Anderson* v. *Gengras Motors, Inc.*, 141 Conn. 688, 109 A.2d 502 (1954). The sole basis of the trial court's ruling, and of the majority's decision, is that the plaintiff failed to plead such damages adequately.

The majority's reasoning is at odds with the modern view of pleading as determined both by our Supreme Court and by this court. That view is to eschew a narrow, technical reading of pleadings and, instead, to read them broadly and with common sense. See *Fuessenich* v. *DiNardo,* 195 Conn. 144, 150–51, 487 A.2d 514 (1985); *DeMartin* v. *Yale-New Haven Hosptial,* 4 Conn. App. 387, 390, 494 A.2d 1222, cert. denied, 197 Conn. 813, 499 A.2d 62 (1985). Thus, pleadings should be read to include, not only what they specifically state, but what they reasonably imply. *Schmidt* v. *Yardney Electric Corporation,* 4 Conn. App. 69, 74, 492 A.2d 512 (1985).

The plaintiff's complaint alleged that as a result of the defendant's negligence "the motor vehicle owned by the plaintiff . . . was greatly damaged and its value greatly reduced." It takes little imagination in today's world to understand that when a motor vehicle is "greatly damaged" it is likely that it will have to be towed and, while being repaired, a substitute vehicle will have to be rented. I find it fanciful at the least to say, as does the majority, that it is just as likely that the plaintiff was able to continue driving his greatly damaged vehicle indefinitely. It is clear, therefore, that the plaintiff's towing and substitute vehicle rental costs were reasonably implied by his allegations of great damage to his vehicle. Nor is there any indication in this record that the defendant was surprised by the defendant's offer of the evidence of losses incident to the damage to his vehicle.

I would therefore find error as to this claim of the plaintiff and remand the case for a new trial limited to the plaintiff's claim for towing and vehicle rental damages.