******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HEATHER HAMILTON *v.* HORACE HAMILTON
# (SC 21207)

Mullins, C. J., and D'Auria, Ecker, Dannehy and Bright, Js.

*Syllabus*

Pursuant to statute (§ 51-183b), a trial judge "who has commenced the trial of any civil cause . . . shall render judgment not later than one hundred and twenty days from the completion date of the trial" but "[t]he parties may waive" this time limitation.

Pursuant to the rules of practice (§ 11-19 (a)), a trial judge "to whom a short calendar matter has been submitted for decision . . . shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties," and, pursuant to § 11-19 (b), "[a] party seeking to invoke [§ 11-19 (a)] shall not later than fourteen days after the expiration of the 120 day period file . . . a motion for reassignment of the undecided short calendar matter . . . ."

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed from the trial court's decision to grant the defendant's motion to modify custody of the parties' minor child and to award the defendant sole legal and primary physical custody. The trial court had issued its memorandum of decision on the motion to modify custody 133 days after the conclusion of an evidentiary hearing that it conducted on that motion, among other motions. Fourteen days after the court issued that decision, the plaintiff, relying on § 51-183b, filed a motion to void and set aside the court's decision. The court denied that motion, concluding that the plaintiff had waived her challenge to the timeliness of the court's custody decision by failing to file a motion for reassignment of the matter within 14 days of that decision, as required by Practice Book § 11-19 (b). On appeal, the plaintiff claimed, inter alia, that the trial court had improperly denied her motion to void and set aside the custody decision and had abused its discretion when it, sua sponte, took judicial notice of child custody proceedings in a prior, unrelated matter involving the plaintiff and another individual, F, in connection with its custody determination in the present case. *Held*:

This court upheld the trial court's determination that the plaintiff had waived her challenge to the timeliness of the trial court's custody decision, as the plaintiff failed to file a timely motion for reassignment pursuant to Practice Book § 11-19 (b).

A review of the text and history of § 51-183b and Practice Book § 11-19, as well as case law applying those provisions and related rules of practice, led this court to conclude that hearings on motions, whether pretrial or posttrial, are short calendar matters for purposes of Practice Book § 11-19.

Accordingly, the defendant's motion to modify custody constituted a short calendar matter, and any challenge to the timeliness of the trial court's

decision on that motion was governed by Practice Book § 11-19 rather than by § 51-183b.

There was no merit to the plaintiff's claim that the term "short calendar matter" in Practice Book § 11-19 does not apply to motions involving the presentation of evidence, such as the defendant's motion to modify custody, as there was nothing in the language of § 11-19 that excludes motions that require evidence, and other related provisions of the rules of practice (§§ 11-14 and 11-18) contradicted the plaintiff's claim insofar as those provisions anticipate that some short calendar matters will require the presentation of evidence.

This court declined to review the plaintiff's claim that the trial court had abused its discretion by failing to rule on two contempt motions that purportedly were before the court during the evidentiary hearing on the motion to modify custody, as the plaintiff was obligated but failed to request after the hearing that the trial court rule on the overlooked motions or to seek an articulation on appeal.

The trial court abused its discretion when it, sua sponte, took judicial notice of child custody proceedings in a prior, unrelated matter involving the plaintiff and F for the purpose of determining custody in the present case without first providing the plaintiff with notice and an opportunity to be heard.

In stating in its memorandum of decision in the present case that F had surrendered his parental rights in the prior, unrelated matter because it was "emotionally debilitating" for F to reason with the plaintiff on any matter concerning their child, the trial court took judicial notice of a fact that the plaintiff was not afforded an opportunity to dispute, contradict, or explain, and the court's acceptance of that fact without first providing the plaintiff with notice and the chance to contest it, or to challenge its admissibility, was error.

Moreover, the trial court's error was harmful insofar as the court's memorandum of decision indicated that the court had relied on the improperly noticed fact to assist it in making factual findings in the present case and that the court's custody decision was based in significant part on the improperly noticed fact.

Accordingly, this court reversed the trial court's custody determination and remanded the case for further proceedings.

Argued March 5—officially released May 19, 2026

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Olear, J.*, rendered judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Klau, J.*, granted in

part the defendant's motion to modify custody, and the plaintiff appealed. *Reversed in part*; *further proceedings*.

*Campbell D. Barrett*, with whom was *Stacie L. Provencher*, for the appellant (plaintiff).

*David V. DeRosa*, for the appellee (defendant).

*Opinion*

D'AURIA, J. The plaintiff, Heather Morrison,[1] appeals from the trial court's postdissolution decision granting the defendant, Horace Hamilton, sole legal and primary physical custody of their minor daughter, and from the court's denial of her motion to void and to set aside that decision. The plaintiff claims that the court (1) violated General Statutes § 51-183b by denying her motion to void and to set aside its custody decision that it issued more than 120 days after the conclusion of the evidentiary hearing on that issue, (2) abused its discretion by refusing to rule on two pending contempt motions that it considered during an evidentiary hearing involving multiple motions, and (3) abused its discretion by taking judicial notice, sua sponte, of the custody proceedings between her and the father of her other child. We disagree with the plaintiff's first claim, decline to review her second, and agree with her third. We therefore reverse only the trial court's custody decision and affirm in all other respects.

The record reveals the following relevant facts, either undisputed or as found by the trial court. The plaintiff and the defendant married in 2013 and have one daughter, born in 2015. In 2019, the court dissolved the parties' marriage and ordered that they share joint legal and physical custody of their daughter. Both parties then filed many contempt motions with respect to the custody and care of their daughter. The plaintiff, self-represented at the time, filed most of these motions, many of which were frivolous, leading the court to require that she file a request for leave to file any further motions

---

[1] The plaintiff was formerly known as Heather Hamilton.

for modification, pursuant to Practice Book § 25-26 (g), before filing such motions. In 2022 and 2023, the parties filed separate motions to modify the dissolution judgment, each seeking sole legal and primary physical custody of their daughter. The court held an evidentiary hearing to resolve the custody motions and several other pending motions on November 22, 2022, and on March 22 and April 19, 2023, at which the parties presented testimony and exhibits.

The trial court issued a memorandum of decision on August 30, 2023, 133 days after the conclusion of the hearing. The court awarded the defendant sole legal and physical custody of the daughter and issued additional orders relating to the parenting schedule and health insurance. The court found "that both parents love [their daughter]. However, the [plaintiff] is incapable of coparenting effectively with the [defendant]. The parties cannot effectively communicate; the fault for that problem lies almost exclusively with the [plaintiff]. Every significant decision concerning [their daughter's] educational and health needs is a source of tremendous conflict. The [plaintiff] repeatedly ignores court orders and fails to follow the parenting time schedule. One parent, and one parent only, needs to have the legal authority to make decisions on [the daughter's] behalf." (Footnote omitted.) Just before the last sentence of this quoted paragraph, the court included a footnote, stating "that the [plaintiff] has a second child with another man. He determined that trying to reason with the [plaintiff] on any matter concerning their child was so emotionally debilitating that he effectively surrendered his parental rights in November, 2021. See *Francis* v. *Francis*, Docket No. FA-09-4042921-S." The court's decision also did not expressly address two of the parties' contempt motions that it had identified as outstanding during the evidentiary hearing.

Fourteen days after the trial court issued its decision, the plaintiff moved to void and to set aside the court's orders in its memorandum of decision because more

than 120 days had elapsed between the conclusion of the hearing and the issuance of the decision. The plaintiff relied on § 51-183b, which mandates that a court issue a decision "not later than one hundred and twenty days from the completion date of the trial of such civil cause." The court denied the plaintiff's motion, holding that postjudgment modification motions in family court are "short calendar matter[s]" under Practice Book § 11-19, which imposes the same 120 day deadline but, unlike § 51-183b, requires that the party seeking to invoke Practice Book § 11-19 file a motion for reassignment not later than 14 days after the expiration of the 120 day deadline. See Practice Book § 11-19 (b). The court concluded that the plaintiff had waived her claim that its decision was not issued within 120 days of the conclusion of the hearing because she had failed to file a motion for reassignment within 14 days of the expiration of that deadline, as required by Practice Book § 11-19 (b). The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-2.

I

The plaintiff first claims that the trial court incorrectly denied her motion to void and to set aside its decision because the court issued its ruling more than 120 days after the conclusion of the evidentiary hearing. The plaintiff does not dispute that her motion to vacate was untimely if Practice Book § 11-19 applies. The plaintiff contends that the postjudgment modification hearing was a "trial" under § 51-183b, and not a "short calendar matter" under Practice Book § 11-19, because the court heard evidence on her motion. She thus argues that the court incorrectly concluded that she had failed to file a timely motion for reassignment, as required by Practice Book § 11-19 (b). Although the relationship between § 51-183b and Practice Book § 11-19 is not obvious—the former enacted by the legislature, the latter by the judges of the Superior Court at different times—we disagree with the plaintiff that § 51-183b governed her motion

for modification. Rather, this motion was governed by Practice Book § 11-19.

Our interpretation of § 51-183b and Practice Book § 11-19 is a legal question subject to plenary review. See, e.g., *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 353 Conn. 793, 802, 347 A.3d 856 (2025); see also *State* v. *Moore*, 352 Conn. 912, 919, 336 A.3d 1222 (2025). "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation." (Internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, 345 Conn. 1, 9, 282 A.3d 959 (2022). We must therefore determine the meaning of the provisions' language "as applied to the facts of the case . . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" in enacting § 51-183b and of the judges of the Superior Court in enacting Practice Book § 11-19. (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010). In considering the meaning of these provisions, "we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose" of those provisions. (Internal quotation marks omitted.) *Health Body World Supply, Inc.* v. *Wang*, 353 Conn. 296, 313, 342 A.3d 987 (2025).

We begin with the language of § 51-183b, which provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section." Section 51-183b "is the most recent revision of legislation that, in order to reduce delay and its attendant costs, imposes time limits on the power of a trial judge to render judgment in a civil case." *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 691, 577 A.2d 1047 (1990).

In 1879, the legislature enacted the predecessor of § 51-183b "probably" in response to this court's decisions

holding that, "following the completion of a trial, judgment in a case could not be held over until the following term absent the consent of the parties . . . ." Id. In past cases interpreting § 51-183b and its predecessors, we have held that the trial court's rendering of a judgment after § 51-183b's timeline implicates the trial court's personal jurisdiction over the parties, not its subject matter jurisdiction. See id., 692. "Even after the expiration of the time period within which a judge has the power to render a valid, binding judgment, a court continues to have jurisdiction over the parties until and unless they object. It is for this reason that a late judgment is merely voidable, and not void." Id., 692–93. The determination of whether a party has waived any objection to the timeliness of a trial court's decision is a factual inquiry that is based on the circumstances, and there is no set time limit for raising an objection. See id., 693–94.

Although the legislature did not define the term "trial" for purposes of § 51-183b, this court has understood that term to mean only a court trial and not the rendering of judgment after a jury trial. In *Gordon* v. *Feldman*, 164 Conn. 554, 325 A.2d 247 (1973), we held that the predecessor of § 51-183b "was designed to ensure that, *in a case tried to the court*, the judge consider and decide the controversy expeditiously and within a reasonably brief period after trial. . . . The salutary effect of the statute is to compel diligence and a prompt decision on the part of the judge who tried the case, and to avoid the manifest disadvantages attendant on long delay in rendering judgment." (Citations omitted; emphasis added.) Id., 556. In addition, we held in *Gordon* that the rules of practice provided the procedural method by which a party may compel a trial court to rule on posttrial motions after a jury verdict because the rules mandated that the court rule on those motions, and, "[s]hould the court refuse to decide the motion and fail to render judgment, the parties may seek an order from this court directing the court to dispose of the motion and to render judgment accordingly." Id., 558; see also *Tough* v. *Ives*, 159 Conn. 605, 606, 268 A.2d 371 (1970). Thus, although the rules

of practice at the time did not themselves provide a time limit for a trial court to rule on motions, this court relied on the rules of practice, rather than § 51-183b, to compel a trial court to issue a ruling on matters other than those that derived from a court trial after an extended period.

In 1992, the judges of the Superior Court established the 120 day rule for "short calendar matter[s]" now found in Practice Book § 11-19 (a), which provides in relevant part that a judge or judge trial referee "to whom a short calendar matter has been submitted for decision, with or without oral argument, shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties . . . ." Section 11-19 (a) further provides that, "[i]f a decision is not rendered within this period the matter may be claimed in accordance with subsection (b) for assignment to another judge or referee." Section 11-19 (b) provides that "[a] party seeking to invoke the provisions of this section *shall not later than fourteen days after* the expiration of the 120 day period file with the clerk a motion for reassignment of the undecided short calendar matter which shall set forth the date of submission of the short calendar matter, the name of the judge or referee to whom it was submitted, that a timely decision on the matter has not been rendered, and whether or not oral argument is requested or testimony is required. The failure of a party to file a timely motion for reassignment shall be deemed a waiver by that party of the 120 day time." (Emphasis added.)

Like the legislature that enacted § 51-183b, which did not define "trial," the judges of the Superior Court did not specifically define "short calendar matter[s] . . . ." Practice Book § 11-19 (a). Nevertheless, at the time the judges of the Superior Court established the 120 day time limitation in Practice Book § 11-19, that chapter of the rules of practice already contained a well established meaning for "short calendar matter[s] . . . ."[2] See,

---

[2] As of January 1, 2025, the judges of the Superior Court enacted Practice Book § 25-34A, to establish a new process for hearing motions

e.g., *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 561–62, 223 A.3d 368 (2020) ("'[i]n determining the meaning of a statute [or rule] . . . we look not only at the provision at issue, but also to the broader statutory [or Practice Book] scheme to ensure the coherency of our construction'")). Under what is now Practice Book § 11-13 (a), matters placed on the "short calendar list" for disposition include "*all motions and objections* to requests when practicable, and . . . any motion in a case on trial, or assigned for trial, may be disposed of by the judicial authority at its discretion, or ordered upon the short calendar list . . . ." (Emphasis added.) Pursuant to Practice Book § 11-14, "[s]hort calendar sessions" are to be held "in each judicial district and geographical area at least once each month, the date, hour and place to be fixed by the presiding judge upon due notice to the clerk. . . . Notice of the assigned date and time of the *motion* shall be provided to attorneys and self-represented parties of record." (Emphasis added.) Under Practice Book § 11-15, "[m]atters to be placed on the short calendar shall be assigned automatically by the clerk without written claim . . . . Motions to dismiss, motions to strike, and motions for summary judgment shall be assigned in accordance with [Practice Book §§] 10-31, 10-40 and 17-45, respectively." Finally, pursuant to Practice Book § 11-18 (b), "any *motion* for which oral argument is of right and as to any *other motion* for which the judicial authority grants or, in its own discretion, requires argument or testimony, the date for argument or testimony shall be set by the judge to whom the motion is assigned."[3] (Emphasis added.)

in family matters, called the "Pathways approach," in place of the prior short calendar process. See Practice Book § 25-50A. That revision does not impact our resolution of this appeal because it took effect after the relevant proceedings. We nevertheless encourage the Rules Committee of the Superior Court to ensure that trial court decisions on motions subject to § 25-34A are subject to a 120 day time limit.

[3] Between 1995 and 1998, Practice Book (1978–97) § 211, the predecessor of § 11-18, contained an additional subsection that provided: "(e) Nothing in this rule requires the court to rule on a motion before the expiration of 120 days."

The terminology used in these provisions of the rules of practice manifests an intent that "short calendar matter[s]," as used in Practice Book § 11-19, means motions and objections, regardless of whether those motions require argument or testimony. Those provisions repeatedly use the term "motion" to refer to the "matters" that require disposition on the short calendar. That meaning is distinct from "trial" because the rules of practice do not permit a party to claim a trial to the short calendar, and Practice Book § 11-13 makes clear that the ruling on a "motion" is different from a ruling during a "trial." We consider the choice to use "short calendar matter" in Practice Book § 11-19, rather than any other language, as a manifestation of the intent of the judges of the Superior Court that we construe the phrase consistent with both its "well-known meaning" and its "technical legal meaning . . . ." *State* v. *Moore*, supra, 352 Conn. 925.

The Appellate Court's reading of Practice Book § 11-19 and § 51-183b supports the interpretation of "short calendar matter[s]" to mean all motions and objections because the Appellate Court has consistently treated motions as governed by Practice Book § 11-19, not § 51-183b. See, e.g., *Taylor* v. *King*, 121 Conn. App. 105, 113 n.6, 116, 994 A.2d 330 (2010) (§ 51-183b, not Practice Book § 11-19, applied to court's decision on merits of case after trial); *Irving* v. *Firehouse Associates, LLC*, 95 Conn. App. 713, 719, 898 A.2d 270 (Practice Book § 11-19, not § 51-183b, applied to court's approval of attorney trial referee's report claimed to short calendar), cert. denied, 280 Conn. 903, 970 A.2d 90 (2006); see also *Levine* v. *Levine*, 88 Conn. App. 795, 800–801, 871 A.2d 1034 (2005) (§ 51-183b did not apply to postjudgment motion in limine); *Bramwell* v. *Dept. of Correction*, 82 Conn. App. 483, 488–89, 844 A.2d 957 (2004) (§ 51-183b unambiguously did not apply to motion for judgment of dismissal because that provision applies to judgments after trial and not "rulings on motions," even if those motions are dispositive). Indeed, the Appellate Court has noted that, when the judges of the Superior Court drafted Practice

Book § 11-19 "to provide for a 120 day rule as to motions, they did not view . . . § 51-183b as including within the term 'trial' arguments heard on motions, or the rule would have been unnecessary." *Levine* v. *Levine*, supra, 800 n.4. This understanding is sensible because this court had interpreted § 51-183b to apply to a judge's decision on the merits of the case after a trial to the court. See, e.g., *Waterman* v. *United Caribbean, Inc.*, supra, 215 Conn. 691; *Gordon* v. *Feldman*, supra, 164 Conn. 556. This point demonstrates that the purpose of Practice Book § 11-19 was to expand, albeit with a different procedural requirement, the 120 day time limit applicable to court trials on the merits to include traditional short calendar matters, including motions and objections.

As the trial court in the present case aptly recognized, this understanding of "short calendar matter[s]" is consistent with the Superior Court's treatment of postjudgment motions in family matters under Practice Book § 11-19. See, e.g., *Pavloff* v. *Pavloff*, Superior Court, judicial district of Fairfield, Docket No. FA-11-4036107-S (March 14, 2013) (55 Conn. L. Rptr. 686, 687) (decision on postjudgment motion to modify dissolution judgment governed by Practice Book § 11-19, not § 51-183b); *Watrous* v. *Watrous*, Superior Court, judicial district of New London, Docket No. FA-04-4000497-S (July 7, 2009) (48 Conn. L. Rptr. 184, 185) (same); *Chan* v. *Chan*, Superior Court, judicial district of Hartford, Docket No. FA-93-0525491-S (August 12, 1999) (25 Conn. L. Rptr. 292, 292) (decision on postjudgment motion to vacate dissolution judgment governed by Practice Book § 11-19, not § 51-183b); see also *Treglia* v. *Seitaridis*, Docket No. CV-03-0193472-S, 2007 WL 241144, *2 (Conn. Super. January 17, 2007) (decision on motion for foreclosure by sale governed by Practice Book § 11-19, not § 51-183b). In the view of Superior Court judges who have addressed the issue, there can be only one trial, and, thus, hearings on motions, whether pretrial or posttrial, are considered "short calendar matter[s]" under Practice Book § 11-19. See, e.g., *Pavloff* v. *Pavloff*, supra, 55 Conn. L. Rptr. 687.

The plaintiff suggests that an interpretation of the term "short calendar matter[s]" includes motions and objections that require only argument, and that any presentation of evidence converts that motion or objection into a "trial" under § 51-183b. But no language in Practice Book § 11-19 excludes motions or objections that require evidence, and we decline to engraft that limitation onto the provision. See, e.*g.*, *State* v. *Hinton*, 352 Conn. 183, 191, 336 A.3d 62 (2025). Instead, the traditional understanding of short calendar in Practice Book §§ 11-14 and 11-18 contradicts the plaintiff's reading because those provisions anticipate that some short calendar matters will require evidence as well as argument. Thus, we conclude that the fact that the court heard evidence in the present case on the pending motion to modify custody did not transform that proceeding from a short calendar matter into a trial.

The plaintiff also directs us to the Appellate Court's use of the ordinary dictionary definitions of a "trial," as used in § 51-183b, to mean "[t]he examination of evidence and applicable law by a competent tribunal to determine the issue of specified charges or claims [and] as [a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." (Citation omitted; internal quotation marks omitted.) *Levine* v. *Levine*, supra, 88 Conn. App. 799, quoting The American Heritage Dictionary of the English Language (New College Ed. 1983) and Black's Law Dictionary (7th Ed. 1999). We are not persuaded that the definitions used in *Levine* control whether the present motion for modification falls under Practice Book § 11-19 because, among other reasons, the plaintiff in *Levine* "did not seek to invoke" Practice Book § 11-19. *Levine* v. *Levine*, supra, 801 n.4.

In sum, we conclude that the motion to modify at issue was a "short calendar matter" under Practice Book § 11-19 because it was a motion. We therefore affirm the trial court's determination that the plaintiff waived her challenge to the timeliness of the court's decision because she failed to file a timely motion for reassignment under § 11-19 (b).

## II

The plaintiff next claims that the trial court abused its discretion by declining to rule on all of the pending motions that it heard during the evidentiary hearing. The plaintiff argues that we should reverse the court's decision because it confirmed that it was hearing evidence with respect to, but failed to expressly rule on, two contempt motions. We decline to review this claim.

On November 22, 2022, and March 22 and April 19, 2023, the trial court held an evidentiary hearing to resolve at least ten pending motions, including the parties' several motions for contempt. The defendant claimed in one of his motions for contempt that the plaintiff had failed to reimburse him for her share of their daughter's health insurance premiums. The plaintiff alleged in one of her motions for contempt that the defendant had failed to pay his share of the child care expenses and healthcare costs, and had made educational decisions for their daughter without the plaintiff's input. In its memorandum of decision, issued after the evidentiary hearing, the court did not expressly rule on either of these two motions. The plaintiff never moved the court to rule on the overlooked matters and did not move for an articulation on appeal.

"Courts are in the business of ruling on litigants' contentions, and . . . operate under the rule essential to the efficient administration of justice, that where a court is vested with jurisdiction over the [subject matter] . . . and . . . obtains jurisdiction of the person, it becomes its . . . duty to determine every question which may arise in the cause . . . . This general rule is particularly important in the context of marital dissolution cases because of the likelihood of continuing changes in the parties' circumstances requiring continuing dispute resolution by the court." (Citation omitted; internal quotation marks omitted.) *Ahneman* v. *Ahneman*, 243 Conn. 471, 484, 706 A.2d 960 (1998). A trial court does not have "discretion, based on notions of judicial efficiency, to decline to exercise its jurisdiction by refusing to consider

certain motions." Id. We recognize that exceptions to this general rule that "a trial court must consider and decide on a reasonably prompt basis all motions properly placed before it may exist in an extreme, compelling situation." Id.

To support her claim, the plaintiff relies on *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007). In *Ramin*, the plaintiff filed a motion for contempt to resolve the defendant's failure to comply with her discovery requests. Id., 332. At a hearing, the trial court issued a decision in which it expressly declined to rule on that motion because the case had been pending for a long period of time and was due to be tried. See id., 333–34. The court later marked the motion "off . . . ." (Internal quotation marks omitted.) Id., 338. On appeal, we held that the trial court's ruling constituted an abuse of discretion because the court abdicated its fundamental obligation to decide all matters presented to it. See id.; see also *Ahneman* v. *Ahneman*, supra, 243 Conn. 485 (trial court abused its discretion by issuing ruling declining to consider certain motions).

The situation described in *Ramin* is not presented here. Although, generally, we would not excuse a trial court's failure to rule on pending motions that it had heard, on this record, it is not clear that the trial court contravened our holding in *Ramin*. The court did not expressly decline to rule on the two outstanding contempt motions at issue; nor did it provide a reason for its failure to do so. At oral argument before this court, the plaintiff's counsel acknowledged that it is unclear whether the trial court declined to rule on the motions for contempt or simply overlooked that those motions were outstanding. Under these circumstances, it was the plaintiff's obligation to seek an articulation or to file a motion for reargument "to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Brennan* v. *Brennan Associates*, 316 Conn. 677, 705, 113 A.3d 957 (2015). Indeed, as the plaintiff's appellate counsel also acknowledged, nothing prevents the plaintiff from reclaiming the

motions or prevented her from reclaiming them during the pendency of this appeal. Under these circumstances, we decline to review the plaintiff's claim regarding the two unresolved motions.

### III

The plaintiff finally claims that the trial court abused its discretion by taking judicial notice sua sponte of the custody proceedings between her and the father of her other child. We agree.

Before the plaintiff married the defendant, the plaintiff had a child with her prior husband. The plaintiff and her prior husband divorced in a separate and unrelated proceeding over which the same trial judge presided. In awarding sole custody of the parties' daughter to the defendant in this case, the court, sua sponte, alluded to and appeared to rely on its view of the motivations of the plaintiff's prior husband in the earlier, unrelated divorce proceeding. Specifically, in the background and findings section of its memorandum of decision in the present case, the court found that the plaintiff had "repeatedly ignore[d] court orders and fail[ed] to follow the parenting time schedule." Immediately after this finding, the court stated in a footnote: "The court notes that the [plaintiff] has a second child with [her prior husband]. He determined that trying to reason with the [plaintiff] on any matter concerning their child was so emotionally debilitating that he effectively surrendered his parental rights in November, 2021. See *Francis* v. *Francis*, Docket No. FA-09-4042921-S." There was no evidence presented during the evidentiary hearing regarding her prior husband's reason for surrendering his parental rights to the plaintiff in their dissolution action (in which she was also the plaintiff). Additionally, neither the plaintiff nor the defendant in the present case requested that the court rely on these motivations from the prior dissolution proceeding.

A "trial court may take judicial notice of the file in another case, whether or not the other case is between

the same parties." (Internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 398, 662 A.2d 118 (1995). "[A] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration." (Internal quotation marks omitted.) *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 331 n.24, 87 A.3d 546 (2014); see also Conn. Code Evid. § 2-1 (c). A trial court cannot sua sponte take judicial notice of a fact "susceptible of explanation or contradiction" without first affording the parties notice and an opportunity to be heard. *Moore* v. *Moore*, 173 Conn. 120, 122, 376 A.2d 1085 (1977); see also Conn. Code Evid. § 2-2 (b). "Even if a fact judicially noticed is not open to argument . . . the better practice is to give the parties an opportunity to be heard before judicial notice is taken." *State* v. *Zayas*, 195 Conn. 611, 615, 490 A.2d 68 (1985). "In order to establish reversible error, the [party claiming error] must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *Scalora* v. *Scalora*, 189 Conn. App. 703, 713, 209 A.3d 1 (2019); see also *Drabik* v. *East Lyme*, supra, 398–99.

We conclude that the trial court abused its discretion by failing to provide notice to the parties before taking judicial notice of the reasons it believed that the plaintiff's prior husband had surrendered his parental rights to the plaintiff in the prior dissolution proceeding.[4] The alleged motivation of the plaintiff's prior husband to forgo his parental rights on the basis of the plaintiff's

___

[4] The defendant argues that we should decline to review this claim for lack of an adequate record because the plaintiff has failed to produce or reference the transcript evincing the statements from the prior dissolution proceeding. We reject the defendant's argument. The trial court's memorandum of decision and the transcripts of the evidentiary hearing in the present case provide us with an adequate record to review this claim. Cf. *Bombero* v. *Marchionne*, 11 Conn. App. 485, 494–95, 528 A.2d 396 (record was inadequate to review claim that court had declined to take judicial notice of sales tax when calculating damages), cert. denied, 205 Conn. 801, 529 A.2d 719 (1987).

conduct is a fact that the plaintiff might reasonably have disputed and could have contradicted or explained in the present proceeding if she had been given notice of the trial court's intention to take judicial notice of those alleged facts. Whether the plaintiff's prior husband found the plaintiff's conduct "emotionally debilitating" is subjective, not within the knowledge gained in the ordinary course of human experience, and not "so notorious that the production of evidence would be unnecessary . . . ." *State* v. *Tomanelli*, 153 Conn. 365, 369, 216 A.2d 625 (1966); see also Conn. Code Evid. § 2-1 (c). If notice had been provided, the plaintiff could have raised any appropriate objection to the evidence, presented testimony about her prior husband's subjective reasons for surrendering custody of his child, and could have offered her own evidence to prove that her conduct in the other divorce case was proper and did not influence her prior husband's actions. Moreover, it is possible and perhaps even likely that any evidence that the court might have relied on to make this observation about the motivation of the plaintiff's prior husband derived from the court's experience presiding over that case, instead of a specific statement memorialized in a court record. See *O'Connor* v. *Larocque*, 302 Conn. 562, 568 n.6, 31 A.3d 1 (2011) (judicial notice of prior case cannot be "all inclusive" but, instead, must be "directed to specific records that must be carefully construed in the subsequent litigation"). The court's acceptance of that fact without first providing the parties with notice and an opportunity to contest it, or to challenge its admissibility, was error. See, e.g., *W. K.* v. *M. S.*, 212 Conn. App. 532, 541–42, 275 A.3d 232 (2022) (trial court erred in taking judicial notice of allegations in separate case to support its credibility determination without affording adverse party opportunity to be heard); *Rogalis, LLC* v. *Vazquez*, 210 Conn. App. 548, 557–58, 270 A.3d 120 (2022) (reversing judgment because trial court took judicial notice of allegations in prior action without affording parties opportunity to be heard); *Scalora* v. *Scalora*, supra, 189 Conn. App. 721–22 (trial court abused its discretion by

taking judicial notice of amount it deemed reasonable clothing allowance without providing parties notice of its intention to do so).

We further conclude that the trial court's error was harmful. The court's primary finding supporting its award of sole custody to the defendant was its conclusion that "[t]he [plaintiff] repeatedly ignores court orders and fails to follow the parenting time schedule" and that "the [plaintiff] has proved herself incapable of coparenting with the [defendant]." The improperly noticed fact concerned the plaintiff's inability to cooperate with another former spouse in a different matter involving a different child. The court's statements indicate that it relied in part on the improperly noticed fact to help it make factual findings in the present case. Specifically, its memorandum of decision indicates that the court used the improperly noticed facts to assess the plaintiff's ability to coparent in the present case without giving the plaintiff the opportunity to be heard about the previous case. Instead, due to the similarity of both cases, the court relied on the improperly noticed facts to find that the plaintiff was unable to effectively coparent in the present case. Indeed, the defendant acknowledged that the court's judicially noticed fact "clearly influenced [its] thinking in this case." Because the court relied on the improperly noticed fact to make a factual finding in the present case and that factual finding served as a significant part of the basis for the court's decision to grant sole legal custody to the defendant, we conclude that the trial court's error caused harm to the plaintiff. See, e.g., *W. K.* v. *M. S.*, supra, 212 Conn. App. 541 (judicial notice was harmful because "court's statements indicate that it relied in part on the adjudicative facts contained in the summary process complaint to help it make factual findings with respect to the plaintiff's allegations"). We therefore conclude that the court's decision to take judicial notice was an abuse of discretion and harmful.

The decision of the trial court is reversed only as to the award of sole custody of the minor child to the defendant

and the case is remanded for further proceedings according to law; the decision is affirmed in all other respects.

In this opinion the other justices concurred.